**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JAMES W. PETERS, JR. and** | § | |
| **ROBYN PETERS,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **SPECIALIZED LOAN SERVICING, LLC** | § | |
| **and WELLS FARGO BANK, N.A.** | § | |
| | § | |
| *Defendants.* | § | |

## EXHIBIT 1

True and correct copies of Plaintiffs' Verified Original Petition, Request for Disclosure, and Application for Temporary Restraining Order, Temporary Restraining Order, Defendant Specialized Loan Servicing, LLC's Original Answer to Plaintiffs' Verified Original Petition, Request for Disclosure, and Application for Temporary Restraining Order and Counterclaim and Defendant Wells Fargo's Original Answer are attached hereto as Exhibit 1.

**Computershare**

Computershare Governance Services, Inc.

100 Beard Sawmill Road, Shelton, CT 06484

Specialized Loan Servicing LLC
Bryan Sullivan
Computershare Inc.
8742 Lucent Boulevard
Highlands Ranch   CO   80129

June 4, 2019

# SERVICE OF PROCESS NOTICE

**Item:** 2019-701

The following is a courtesy summary of the enclosed document(s). **ALL information should be verified by you.**

Note: Any questions regarding the substance of the matter described below, including the status or to whom or where to respond, should be directed to the person set forth in line 12 below or to the court or government agency where the matter is being heard.

| | | |
|---|---|---|
| 1. | **Client Entity:** | Specialized Loan Servicing LLC |
| 2. | **Title of Action:** | James W. Peters, Jr. and Robyn Peters vs. Specialized Loan Servicing, LLC, and Wells Fargo Bank, N.A. |
| 3. | **Document(s) Served:** | Temporary Restraining Order<br>Citation<br>Plaintiffs' Verified Original Petition, Request for Disclosure, and Application for Temporary Restraining Order<br>Verification |
| 4. | **Court/Agency:** | Wise County 271st Judicial District Court |
| 5. | **State Served:** | Texas |
| 6. | **Case Number:** | CV19-05-446 |
| 7. | **Case Type:** | Breach of Contract |
| 8. | **Method of Service:** | Hand Delivered |
| 9. | **Date Received:** | Monday 6/3/2019 |
| 10. | **Date To Client:** | Tuesday 6/4/2019 |
| 11. | **# Days When Answer Due:** 11<br>**Answer Due Date:** 06/14/2019 | CAUTION: Client is solely responsible for verifying the accuracy of the estimated Answer Due Date. To avoid missing a crucial deadline, we recommend immediately confirming in writing with opposing counsel that the date of the service in their records matches the Date Received. |
| 12. | **SOP Sender:**<br>(Name, City, State, and Phone Number) | David M. Vereeke<br>Dallas, TX<br>214-824-1414 |
| 13. | **Shipped To Client By:** | Email Only with PDF Link |
| 14. | **Tracking Number:** | |
| 15. | **Handled By:** | 441 |
| 16. | **Notes:** | Please note there are other Due Dates listed in the document<br>Also Attached: *Exhibits |

NOTE: This notice and the information above is provided for general informational purposes only and should not be considered a legal opinion. The client and their legal counsel are solely responsible for reviewing the service of process and verifying the accuracy of all information. At ComputerShare, we take pride in developing systems that effectively manage risk so our clients feel comfortable with the reliability of our service. We always deliver service of process so our clients avoid the risk of a default judgment. As registered agent, our role is to receive and forward service of process. To decrease risk for our clients, it is not our role to determine the merits of whether service of process is valid and effective. It is the role of legal counsel to assess whether service of process is invalid or defective. Registered agent services are provided by ComputerShare Governance Services, Inc.

# TEMPORARY RESTRAINING ORDER
## THE STATE OF TEXAS

To: SPECIALIZED LOAN SERVICING, LLC
UNITED AGENT GROUP INC
2425 WEST LOOP S SUITE 200
HOUSTON TX 77027

Greeting:

WHEREAS, **DAVID M. VEREEKE**, filed the **PLAINTIFFS' VERIFIED ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER** in the 271st District Court of Wise County, Texas, on **May 30, 2019**, on the Docket of said Court, in a suit numbered and styled

### CV19-05-446
### JAMES W PETERS, Jr. AND ROBYN PETERS
vs
### SPECIALIZED LOAN SERVICING, LLC AND WELLS FARGO BANK, N.A.

alleging **WELLS FARGO AND SLS MISREPRESENTED THE LOAN MODIFICATION OF TERMS, DUAL TRACTED IN VIOATION OF THE TEXAS DEBT COLLECTION ACT AND RESPA AND AMONG OTHER THINGS.** All of which is more fully shown in the petition filed in said cause; and upon presentation of said petition to him and consideration thereof, the Honorable Brock Smith, Judge, of said court, made the following order thereon:

### TEMPORARY RESTRAINING ORDER

You are therefore commanded to desist and refrain from committing any of the acts as set out in the attached copy of the Temporary Restraining Order and Order Setting Hearing For Temporary Orders until and pending the hearing of such petition upon plaintiff's application for a temporary injunction before the Judge of said court at **9:00 AM on June 14, 2019**, in the District Courtroom in the Courthouse of Wise County, in the City of Decatur, Texas when and where you will appear to show cause why injunction should not be granted upon such petition effective until final judgment in such suit.

ATTORNEY FOR PLAINTIFF OR PLAINTIFF
**DAVID M. VEREEKE
1349 EMPIRE CENTRAL DRIVE
SUITE 500, LOCK BOX 56
DALLAS, TX 75247**

Issued and given under my hand and seal of said Court at Decatur, Texas, on this the 31st day of May, 2019.

Brenda Rowe
Wise County District Clerk
P.O. Box 308
Decatur, TX 76234

By _____ Deputy Clerk
Kristi Polone



* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### OFFICER'S RETURN

Came to hand on the _____ day of _____, 20___, at _____ o'clock _____.m. Executed at _____ within the County of _____ at _____ o'clock _____.m. on the _____ day of _____, 20_____. by delivering to the within named _____, in person, a true copy of this process together with the accompanying copy of the instrument being served, having first attached such copy of such instrument to such copy of process and endorsed on such copy of process the date of delivery.
Not executed, the diligence used to execute being _____: for the following reason_____. defendant may be found_____.

_____
SIGNATURE OF AUTHORIZED PERSON SERVING PROCESS

_____ COUNTY, TEXAS

BY _____DEPUTY
Fee for serving this process $_____

CAUSE NO. CV19-05-446

| JAMES W. PETERS, JR. | § | IN THE DISTRICT COURT |
| and ROBYN PETERS, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 271st JUDICIAL DISTRICT |
| | § | |
| SPECIALIZED LOAN SERVICING, LLC, | § | |
| and WELLS FARGO BANK, N.A., | § | |
| | § | |
| *Defendants.* | § | WISE COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

ON THIS DAY, came on to be heard the Application for Temporary Restraining Order ("Application") of James W. Peters, Jr. and Robyn Peters, Plaintiffs. The Court, having examined the verified Application, finds that it shows Plaintiffs to be entitled to a Temporary Restraining Order, pending the hearing on the request for Temporary Injunction.

Moreover, it appears from the facts set forth in Plaintiffs' Application that absent this Court's order, Defendant Specialized Loan Servicing, LLC ("SLS") will conduct a foreclosure sale on June 4, 2019, of Plaintiffs' real property located at 313 County Road 3598, Boyd, TX 76023 ("Property") more particularly described as:

> DESCRIPTION FOR A 13.00 ACRE TRACT OF LAND OUT OF THE JOSE MARIA MORA SURVEY, ABSTRACT NO. 541, WISE COUNTY, TEXAS, SAID TRACT BEING A PORTION OF VOLUME 233, PAGE 263, D.R.W.C.T.;
>
> COMMENCING AT A 1" PIPE FOUND, SAID PIPE BEING BY DEED CALL EAST, 1655.40 VARAS FROM THE SOUTHWEST CORNER OF SAID MORA SURVEY, THENCE EAST 1423.40 FEET, THENCE N 00□15'52"E, 995.32 FEET TO A ½" IRON SET FOR THE POINT OF BEGINNING;
>
> THENCE S 89□30□07 W, 348.25 FEET TO A ½" IRON SET;

**FILED**
_____ AM ⎯2.07 PM

MAY 31 2019

BRENDA ROWE
DISTRICT CLERK-WISE COUNTY, TX
BY_____ DEPUTY

THENCE N 00☐15'52" E, AT 1601.20 FEET PASSING A ½" REF. IRON SCT. AND CONTINUING IN ALL 1626.20 FEET TO A POINT IN THE APPROXIMATE CENTER OF COUNTY ROAD NO. 3598'

THENCE N 89☐30'07" E, WITH THE APPROXIMATE CENTER OF SAID COUNTY ROAD NO. 3598, 348.25 FEET TP A 60D NAIL FOUND, SAID NAIL BEINMG FOR THE NORTHWEST CORNER OF VOLUME 381, PAGE 403, R.R.W.C.T.;

THENCE S 00☐15'52" W, WITH THE WEST LINE OF SAID VOLUME 381, PAGE 403, 1626.20 FEET TO THE POINT OF BEGINNING AND CONTAINING 13.00 ACRES OF LAND.

The Court further finds that such activity will cause substantial harm to Plaintiffs and that Defendant SLS should be enjoined from such activity. The Court further finds that Plaintiffs have shown a probable right and probable injury if this Order is not granted.

The Court also finds that it is necessary to grant this Order without notice to Defendant SLS because it clearly appears from facts shown by the Petition that immediate and irreparable injury, loss, or damage will result to Plaintiffs before notice can be served and a hearing had thereon.

IT IS THEREFORE ORDERED that a Temporary Restraining Order be, and the same is hereby GRANTED and issued, and Defendant SLS, its agents, officers, servants, employees, representatives, attorneys, and other parties in concert or participation with them, including any Trustee or Substitute Trustee, are hereby enjoined from conducting a foreclosure sale or otherwise dispossessing Plaintiffs of their interest in the Property.

IT IS FURTHER ORDERED that this Temporary Restraining Order be effective upon the filing of a Surety Bond or Cash in Lieu of the Bond in the Amount of $ 500 ̄, as required by law. The Temporary Restraining Order shall continue in effect until the hearing set below is completed and/or an Order entered.

IT IS FURTHER ORDERED that upon the filing of such Surety Bond or Cash in Lieu of Bond paid by Plaintiffs, the Clerk of this Court shall issue citation and notice to Defendant SLS of the Temporary Restraining Order and notice to appear to show cause, if any, it has as to why the Temporary Restraining Order shall not be made into a Temporary Injunction, said hearing being set by the Court for the _14th_ day of _June_, 2019, at _9:00_ A.m. in the 271st District Court of Wise County, Texas.

SIGNED this _31_ day of _May_, 2019, at _1:58_ P.m.


_Brock R. Smith_
JUDGE PRESIDING

## CITATION
## THE STATE OF TEXAS

TO:   SPECIALIZED LOAN SERVICING, LLC
      UNITED AGENT GROUP INC
      2425 WEST LOOP S SUITE 200
      HOUSTON TX  77027

Greetings,
You are hereby commanded to appear by filing a written answer to the plaintiff's petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service hereof, before the Honorable 271st Judicial District Court of Wise County, Texas at the courthouse of said County in Decatur, Texas.

Said Plaintiff's petition was filed in said court, on May 30, 2019 numbered and styled

**CV19-05-446**
**JAMES W PETERS, Jr. AND ROBYN PETERS**
vs
**SPECIALIZED LOAN SERVICING, LLC AND WELLS FARGO BANK, N.A.**

The name and address of the attorney or party requesting the citation is:

DAVID M. VEREEKE
1349 EMPIRE CENTRAL DRIVE
SUITE 500 LOCK BOX 56
DALLAS TX  75247

A copy of the PLAINTIFFS' VERIFIED ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER accompanies this citation.

**NOTICE TO DEFENDANT: You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.**

Issued and given under my hand and seal of said Court, at the office in Decatur, Texas, on this the 31st day of May, 2019.

Brenda Rowe
Wise County District Clerk
P.O. Box 308
Decatur, Texas  76234

By _____ Deputy Clerk
         Kristi Polone

*************************************************

### OFFICER'S RETURN

Came  to  hand  on  the  _____  day  of  _____, 20_____  at  _____  o'clock  _____.m.  Executed  at
_____ within  the  County  of  _____  at  _____  o'clock  _____.m.  on  the  _____  day  of
_____, 20_____ , by delivering to the within named _____, in person, a true copy of this process together with the accompanying copy of the instrument being served, having first attached such copy of such instrument to such copy of process and endorsed on such copy of process the date of delivery.
    Not  executed,  the  diligence  used  to  execute  being  _____ ; for the reason
_____ ,  defendant  may  be  found
_____ .

_____
SIGNATURE OF AUTHORIZED PERSON SERVING PROCESS

_____ COUNTY, TEXAS

BY_____DEPUTY

Fee for serving this process $_____

Filed 6/30/19 2:36 PM
Brenda Rowe, District Clerk
Wise County, Texas
By: Kristi Polone

CV19-05-446

CAUSE NO. _____

| | | |
|---|---|---|
| JAMES W. PETERS, JR.<br>and ROBYN PETERS, | §<br>§<br>§ | IN THE DISTRICT COURT |
| *Plaintiffs,* | §<br>§<br>§ | |
| v. | §<br>§ | 271ST ____ JUDICIAL DISTRICT |
| SPECIALIZED LOAN SERVICING, LLC,<br>and WELLS FARGO BANK, N.A., | §<br>§<br>§ | |
| *Defendants.* | §<br>§ | WISE COUNTY, TEXAS |

---

## PLAINTIFFS' VERIFIED ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME, JAMES W. PETERS ("**James**"), JR. AND ROBYN PETERS ("**Robyn**"), Plaintiffs, complaining of SPECIALIZED LOAN SERVICING, LLC, and WELLS FARGO BANK, N.A., Defendants, in this, their Plaintiffs' Verified Original Petition, Request for Disclosure, and Application for Temporary Restraining Order, and for cause of action would respectfully show the Court as follows:

### I. PARTIES

1.      Plaintiffs are individuals residing in Wise County, Texas.

2.      Defendant Specialized Loan Servicing, LLC ("**SLS**") is foreign limited liability company and may be served with citation by serving its registered agent, United Agent Group Inc., at 2425 West Loop S, Suite 200, Houston, Texas 77027.

**PLAINTIFFS' VERIFIED ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER**
*Peters*

Page 1

3.      Defendant Wells Fargo Bank, N.A. ("**Wells Fargo**") is foreign financial institution and may be served with citation by serving its registered agent, Corporation Service Company, 211 E 7th Street, Suite 620, Austin, Texas 78701.

## II.      JURISDICTION AND VENUE

4.      The amount in controversy exceeds the minimum jurisdictional limits of this Court, and the Court has jurisdiction over the subject matter.

5.      The Court has jurisdiction over the Defendants in that Defendants are doing business in Dallas County, Texas.

6.      As a suit affecting title to land, this Court has venue over this matter pursuant to Tex. Civ. Prac. & Rem. Code § 15.011. Moreover, venue is proper because all or a substantial part of the events or omissions that gave rise to this claim occurred in this county.

7.      This is a Level II case for purposes of discovery.

## III.      AGENCY AND RESPONDEAT SUPERIOR

8.      Whenever in this petition it is alleged that any Defendant did, or failed to do, any act, thing and/or omission, it is meant that Defendant itself or its agents, officers, servants, employees, vice principals, or representatives either did or failed to do such act, thing and/or omission, and it was done with the full authorization or ratification of Defendant, and/or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, vice principals, or representatives and/or with actual and/or apparent authority of Defendant.

**PLAINTIFFS' VERIFIED ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER**
*Peters*

**Page 2**

## IV.   FACTUAL BACKGROUND

### *Plaintiffs found their home*

9.     Plaintiffs contend they are the rightful owner of the Property located at 313 County Road 3598, Boyd, TX 76023 ("**Property**"). The Property is more particularly described as:

> DESCRIPTION FOR A 13.00 ACRE TRACT OF LAND OUT OF THE JOSE MARIA MORA SURVEY, ABSTRACT NO. 541, WISE COUNTY, TEXAS, SAID TRACT BEING A PORTION OF VOLUME 233, PAGE 263, D.R.W.C.T.;
>
> COMMENCING AT A 1" PIPE FOUND, SAID PIPE BEING BY DEED CALL EAST, 1655.40 VARAS FROM THE SOUTHWEST CORNER OF SAID MORA SURVEY, THENCE EAST 1423.40 FEET, THENCE N 00□15'52"E, 995.32 FEET TO A ½" IRON SET FOR THE POINT OF BEGINNING;
>
> THENCE S 89□30□07 W, 348.25 FEET TO A ½" IRON SET;
>
> THENCE N 00□15'52" E, AT 1601.20 FEET PASSING A ½" REF. IRON SCT. AND CONTINUING IN ALL 1626.20 FEET TO A POINT IN THE APPROXIMATE CENTER OF COUNTY ROAD NO. 3598'
>
> THENCE N 89□30'07" E, WITH THE APPROXIMATE CENTER OF SAID COUNTY ROAD NO. 3598, 348.25 FEET TP A 60D NAIL FOUND, SAID NAIL BEINMG FOR THE NORTHWEST CORNER OF VOLUME 381, PAGE 403, R.R.W.C.T.;
>
> THENCE S 00□15'52" W, WITH THE WEST LINE OF SAID VOLUME 381, PAGE 403, 1626.20 FEET TO THE POINT OF BEGINNING AND CONTAINING 13.00 ACRES OF LAND.

A true and correct copy of the General Warranty Deed is attached as **Exhibit A** and is incorporated by reference herein for all purposes.

10.     On November 17, 2005, Plaintiffs purchased the Property. To finance the purchase of the Property, Plaintiffs borrowed $156,750.00 from PrimeLending, a PlainsCapital Company ("**Loan**"). The Loan is evidenced by a Note and Deed of Trust. Pursuant to the Note,

the Loan was to be repaid over a 30-year term at a 6.875% per annum interest rate with monthly principal and interest payments of $1,029.74. A true and correct copy of the Note is attached as **Exhibit B** and is incorporated by reference herein for all purposes. A true and correct copy of the Deed of Trust is attached as **Exhibit C** and is incorporated by reference herein for all purposes.

11.     In January 2007, Plaintiffs refinanced their Loan with PlainsCapital in Weatherford, Texas. The monthly payment went up to $1,056.00.

12.     Upon information and belief, the Loan was sold to Wells Fargo in November 2008.

### *Plaintiffs struggled financially and asked Wells Fargo for help*

13.     Plaintiffs contacted Wells Fargo around November 2010 to request for any options to delay payment. Wells Fargo denied Plaintiffs' request, and Plaintiffs eventually fell behind on the Loan.

14.     Plaintiffs received a letter dated September 4, 2008 from Wells Fargo, stating Plaintiffs needed to pay $6,694.06 to bring the Loan current. *See* **Exhibit D.**

15.     Wells Fargo then contacted Plaintiffs, offering a workout program to prevent foreclosure. Under the workout program, Plaintiffs had to make four trial payments of $1,694.06 per month. Wells Fargo also said Plaintiffs would then be eligible for a loan modification, provided Plaintiffs sent the required documents.

### *Plaintiffs did what Wells Fargo advised them to do*

16.     The first payment was due on or before November 1, 2008, and Plaintiffs timely paid the first payment and submitted the information needed for a loan modification.

17.     However, on April 11, 2009, Plaintiffs received a call from Wells Fargo stating Wells Fargo was going to foreclosure because Plaintiffs failed to remit the first payment. But Plaintiffs timely paid what was due.

18.     The call was then transferred to another Wells Fargo representative, Tierra Jones, who confirmed the receipt of the first payment and that the remaining balance of $5,000.00 was placed in a suspense account.

19.     In January 2009, Wells Fargo called Plaintiffs and demanded that Plaintiffs paid the full amount of indebtedness. Plaintiffs explained the workout agreement in place, and the Wells Fargo representative assured that, as long as Plaintiffs continued making the trial payments, Wells Fargo would not foreclose.

20.     Then, Plaintiffs made their February 1, 2009 payment, and Wells Fargo accepted it. However, Wells Fargo called Plaintiffs again, asking Plaintiffs to pay $6,694.06 to prevent foreclosure. Again, Plaintiffs explained the workout agreement, and Wells Fargo reassured there would be no foreclosure as long as the trial payments are submitted.

21.     When Wells Fargo refused the March 1, 2010 payment, Plaintiffs paid $6,694.06 to bring the Loan current. Wells Fargo then sent a payment reversal letter and the unapplied payment of $1,583.96.

## *The runaround continued*

22.     Wells Fargo then told Plaintiffs they could be approved for a loan modification with an initial payment of $2,818.00 due on November 26, 2010. Plaintiffs also received a call from a Wells Fargo representative, Terrell Jackson, about this loan modification.

**PLAINTIFFS' VERIFIED ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
*Peters*

**Page 5**

23.     However, Plaintiffs received a November 16, 2010 letter from Wells Fargo's foreclosure attorneys, stating the Loan was accelerated and Plaintiffs needed to pay $180,078.73. *See* **Exhibit E.**

24.     Plaintiffs called Wells Fargo on November 25, 2010, and asked why Wells Fargo rejected past payments and were advised that the Property was set for foreclosure.

25.     Wells Fargo eventually pre-qualified Plaintiffs for a loan modification and assured Plaintiffs that foreclosure would not take place while Plaintiffs were in loan modification.

26.     But Wells Fargo's foreclosure attorneys sent Plaintiffs a letter, stating the foreclosure sale is set on December 1, 2010.

27.     Plaintiffs called Wells Fargo and spoke to Terrell Jackson again who said Wells Fargo would contact its attorneys to clarify the issue that the Property should not be foreclosed upon.

28.     Plaintiffs eventually accepted another trial payment offer by Wells Fargo and began making payments of $2,818.00 per month.

***Plaintiffs' bankruptcy***

29.     Plaintiffs filed Chapter 13 bankruptcy on January 3, 2010, but Plaintiffs received a letter stating Freddie Mac bought the Property at a March 4, 2011 foreclosure sale. *See* **Exhibit F.** Upon information and belief, this foreclosure sale is not recorded.

30.     Plaintiffs' bankruptcy was a relief for a while, but Wells Fargo started sending letters again to Plaintiffs stating certain added sums to the Loan.

## *The aftermath*

31.     In a letter dated July 16, 2018, $26,000 had been added to the principal balance of the Loan.

32.     Wells Fargo sent Plaintiffs a letter dated September 13, 2018, offering assistance through its representative, Jacob Hammond.

33.     Jacob Hammond sent Plaintiffs the loan modification packet, which Plaintiffs completed, but Wells Fargo advised Plaintiffs that there were missing documents. Plaintiffs sent all documents several times to make sure Wells Fargo had everything that was needed to modify the Loan. Plaintiffs dispute Wells Fargo's contention that Plaintiffs' paperwork was incomplete.

34.     On September 13, 3018, Plaintiffs contacted Wells Fargo to check on the status of their loan modification. Jacob Hammond assured the loan modification is still processing; Wells Fargo had received complete documents; and there would be no foreclosure while loan modification is pending.

## *Plaintiffs discovered inconsistencies*

35.     But Plaintiffs went to the courthouse in Wise County and saw that the Property was listed for foreclosure despite Wells Fargo's assurances that there would be no foreclosure while loan modification is pending.

36.     Wells Fargo consistently denied an imminent foreclosure and never notified Plaintiffs that the Property was listed for foreclosure.

37.     Wells Fargo later told Plaintiffs that their loan modification application was denied because the documents were incomplete. Plaintiffs were told to send in all documents for loan modification again.

38.     Nonetheless, Plaintiffs received a letter dated December 10, 2018, stating Plaintiffs had to pay $196,000.00 in order to keep the Property.

39.     Also in December 2018, Plaintiffs received a letter from Wells Fargo, stating their loan modification documents were received and under review.

40.     Upon information and belief, the Loan was sold to SLS.

41.     SLS accelerated the Loan on May 4, 2019 and notified Plaintiffs that the Property is set for foreclosure on June 4, 2019. *See* **Exhibit G**.

### V.     CAUSES OF ACTION

**AGAINST SLS**

***Breach of Contract***

42.     All facts and allegations set forth above are incorporated by reference herein for all purposes.

43.     "The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach." *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622-23 (Tex. App.—Fort Worth 2005, no pet.).

44.     The Deed of Trust is a valid contract between the Plaintiffs and SLS pursuant to the assignment.

45.     The Deed of Trust expressly incorporates the provisions of the Real Estate Settlement Procedures Act ("**RESPA**"). *See* Ex. C. As such, the Deed of Trust and RESPA constitute an integrated contract. *See Hernandez v. Home Sav. Ass'n*, 606 F.2d 596, 600–01 (5th Cir. 1979).[1]

---

[1] Federal law is "particularly persuasive in this type of case, as much home mortgage litigation in Texas is being tried in the federal courts." *See, e.g., Wigginton v. Bank of N.Y. Mellon*, No. 3:10–CV–2128–G, 2011 WL 2669071, at *3

46.     RESPA prohibits dual tracking. "Dual tracking occurs where a servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure." *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 Fed. Appx. 314, 319 (5th Cir. 2015).

47.     As assignee of the Loan, SLS committed dual tracking and thus breached the Deed of Trust when it noticed the foreclosure sale on June 4, 2019. Plaintiffs had pending loan modification application with Wells Fargo, and SLS failed to accordingly evaluate Plaintiffs' options before accelerating the note.

48.     As a proximate result of the foregoing wrongful conduct by SLS, Plaintiffs have incurred damages. Plaintiffs have lost their time in taking other remedial steps to stop the wrongfully scheduled foreclosure. Plaintiffs also incurred court costs and reasonable and necessary attorneys' fees, of which they seek recovery.

### *Texas Debt Collection Act*

49.     All facts and allegations state above are incorporated herein.

50.     TDCA provides remedies for wrongful debt collection practices used by a debt collector in debt collection. *See* Tex. Fin. Code §§ 392.001–.404; *see also Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 135 (Tex. App.—Corpus Christi 2001, no pet.).

51.     "Debt collection" is defined as the act or practice "in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5).

52.     Plaintiffs are "consumers" within the meaning of Tex. Fin. Code § 392.001, and the debt in question relating to the Property is a "consumer debt" within the meaning of such

---

(N.D.Tex. July 7, 2011) (mem. op. and order); *Wells v. BAC Home Loans Servicing, L.P.*, W–10–CA–00350, 2011 WL 2163987, at *3 (W.D.Tex. April 26, 2011)(order) (both citing numerous federal cases applying Texas law).

statute because the debt is an obligation for personal, family, or household purposes. *See id.* at § 392.001(1), (2).

53.     A "creditor" is "a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." *Id.* at § 392.001(3). On the other hand, a "debt collector" is "a person who directly or indirectly engages in debt collection." *Id.* § 392.001(6). SLS is a debt collector participating in debt collection. *See Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j.) (TDCA applies to entities attempting to collect their own debts).

54.     SLS's acts, omissions, and conduct as alleged *supra* constitute violation of the TDCA:

> In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: ***threatening to take an action prohibited by law***. Tex. Fin. Code § 392.301(a)(8).

55.     SLS violated § 392.301(a)(8) when it accelerated and threatened to conduct the foreclosure sale when its contractual right to foreclose is not ripe. The Fifth Circuit Court of Appeals has acknowledged that even if a loan is in default, a lender may still violate 392.301(a)(8). "In determining whether foreclosure would be prohibited by law, however, what matters is whether the mortgagor has a ***right to foreclose***, not whether the debt is considered in default." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 478 (5th Cir. 2015). Because Plaintiffs have a pending loan modification with SLS's predecessor, Wells Fargo, SLS as assignee of the Loan and servicing transferee should have evaluated Plaintiffs' loan modification application. It thus "threatened to foreclose, and thus to take an action" when it accelerated the Loan and noticed the foreclosure sale. Ex. G.

56. Pursuant to such violations of law, Plaintiffs are entitled to relief provided by Tex. Fin. Code § 392.403, including but not limited to (1) recovery of all actual damages sustained as a result of violations of such provisions of the TDCA; (2) all actual direct and indirect economic damages, including but not limited to damages for loss of credit and damage to credit reputation; and (3) damages for mental anguish and emotional distress. Additionally, Plaintiffs seek damages resulting from payment of excess or additional interest, and any consequential damages.

57. Also, pursuant to Tex. Fin. Code § 392.403, Plaintiffs are entitled to recover their attorneys' fees reasonably related to the amount of work performed and costs, for all actions in the trial court, the Court of Appeals, and the Supreme Court.

## *RESPA*

58. All facts and allegations set forth above are incorporated herein.

59. Congress enacted RESPA in 1974 to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. §2601(a); *see also Moreno v. Summit Mortgage Corp.*, 364 F.3d 574, 576 (5th Cir. 2004).[2]

60. RESPA, codified at 12 U.S.C. § 2601-2617 *et seq.* and located at 12 C.F.R. § 1024 (Reg. X), sets forth certain requirements for loan servicers. Pursuant to RESPA, the Consumer Financial Protection Bureau ("**CFPB**") is tasked with promulgating said rules and

---

[2] Numerous federal circuit courts of appeals as well as federal district courts, including the Eastern District of Texas, have analyzed RESPA and determined that it is a "remedial consumer protection statute" and as such, is to be liberally construed to best-serve Congress's intent. *See, e.g., Geoffrion v. Nationstar Mortgage LLC*, 182 F. Supp. 3d 648, 664 (E.D. Tex. 2016), *appeal dismissed* (Oct. 18, 2016) (The Court "agrees with the line of cases that has determined that RESPA is a remedial consumer-protection statute."); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665–666 (9th Cir. 2012) (finding that "Congress intended RESPA to serve consumer-protection purposes" and stating that the statute has a remedial purpose); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) (stating that "RESPA's overall goal [is] to protect consumers from abusive practices that result in unnecessarily high settlement charges.") (citation omitted); *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (finding that "RESPA is a consumer protection statute that regulates the real estate settlement process").

regulations, as well as interpretations as may be necessary to protect consumers from abusive mortgage practices and to provide greater protection for borrowers who have fallen behind on their mortgage payments.[3] Many of these regulations have been aimed at stopping the practice of "dual tracking," a tactic employed by unscrupulous mortgage servicers.

61.     "A borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."[4] The instant mortgage is within the scope of RESPA as a "federally related mortgage loan." 12 U.S.C. § 2602.

62.     12 C.F.R. § 1024.41(i) provides that "a servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." In other words, the procedural requirements under the loss mitigation rule apply *only once per servicer*, effectively leaving the borrower with just "one bite at the apple" to bring a RESPA cause of action for loss mitigation rule violations. *See* Regulation X, 12 C.F.R. pt. 1024, Supp. I, Official Interpretation of Reg. X. However, "[a] transferee servicer and a transferor servicer, however, are *not the same servicer*. Accordingly, a transferee servicer is required to comply with the applicable requirements of § 1024.41..."

63.     Therefore, SLS as the transferee servicer is required to comply with RESPA and is obliged to evaluate Plaintiffs' loan modification options as they have already sent all required loan modification documents.

64.     "[12 C.F.R.] Section 1024.41(g) prohibits dual tracking, and 1024.41(a) expressly provides for a private right of action in the event the lender violates the provision."[5] "Dual

---

[3] *See* 12 U.S.C. § 2617(a).
[4] 12 C.F.R. § 1024.41(a).
[5] *Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 359 (5th Cir. 2016).

tracking is the term given to situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options."[6]

65.     12 C.F.R. § 1024.41(c) requires servicers to evaluate complete loss mitigation applications, and then provide certain written correspondence in response. Specifically, SLS was required to:

> (i) Evaluate the borrower for all loss mitigation options available to the borrower; and
> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

12 C.F.R. § 1024.41(c)(1)(i)-(ii).

66.     12 C.F.R. § 1024.41(d) also requires servicers to provide certain written notices concerning the denial of a complete loss mitigation application:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

12 C.F.R. § 1024.41(d).

---

[6] *Id.; see also Wentzell*, 627 Fed. Appx. at 319 n.3 ("Dual tracking occurs 'where a servicer moves forward with foreclosure while simultaneously working with the borrower to avoid foreclosure.'")(quoting Press Release, CONSUMER FINANCIAL PROTECTION BUREAU, *CFPB Rules Establish Strong Protections for Homeowners Facing Foreclosure* (Jan. 17, 2013), *available at* http://www.consumerfinance.gov/newsroom/consumer-financial-protection-bureau-rules-establish-strong-protections-for-homeowners-facing-foreclosure/.).

67.     SLS failed to do any of these. In fact, SLS merely accelerated the Loan and noticed foreclosure sale. SLS made no attempts to communicate with Plaintiffs regarding loan modification.

68.     Finally, 12 C.F.R. § 1024.41(h) entitles a borrower to have the opportunity to appeal the denial of any loss mitigation request. Again, SLS failed to provide Plaintiffs with this opportunity.

69.     "RESPA provides that servicers who fail to comply with the provisions of the statute shall be liable to borrowers for any actual damages incurred by borrowers as a result of such failure."[7] Under RESPA, actual damages include mental anguish and emotional distress,[8] loss of time and inconvenience,[9] time away from employment to prepare correspondence, and expenses for photocopying and otherwise preparing correspondence,[10] and late fees charged and foreclosure.[11] In addition to actual damages, a borrower may be entitled to recover statutory damages of no more than $2,000.00 if the Court finds a servicer has engaged in a pattern and practice of non-compliance with RESPA.[12] In addition to actual and statutory damages, a borrower who prevails on a claim for a RESPA violation is be entitled to recover "the costs of

---

[7] *Geoffrion v. Nationstar Mortgage LLC*, 182 F. Supp. 3d 648, 662 (E.D. Tex. 2016), *appeal dismissed* (Oct. 18, 2016); 12 U.S.C. § 2605(f)(1)(A).

[8] *Geoffrion v. Nationstar Mortgage LLC*, 182 F. Supp. 3d at 665 ("the Court finds that mental anguish damages are included within RESPA's actual damages provision.").

[9] *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 816 (N.D. Ill. 2001)("Johnstone argues that 12 U.S.C. § 2605(f) allows her to recover for her time and inconvenience. Again, the court agrees with Johnstone.").

[10] *Cortez v. Keystone Bank, Inc.*, 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000)("Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence.").

[11] *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d at 813 ("Johnstone responds by arguing that her amended complaint does, in fact, allege a causal connection between the Bank's alleged RESPA violations and the late fees and foreclosure. The court agrees with Johnstone.")

[12] 12 U.S.C. § 2605(f)(1)(B).

**PLAINTIFFS' VERIFIED ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND**                                    **Page 14**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
*Peters*

the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." [13]

70.     Due to SLS's violations of RESPA, Plaintiffs have incurred attorneys' fees and has suffered severe anxiety, stress, and mental anguish worrying about foreclosure.

### AGAINST WELLS FARGO

71.     All facts and allegations stated above are incorporated herein.

72.     TDCA provides remedies for wrongful debt collection practices used by a debt collector in debt collection. *See* Tex. Fin. Code §§ 392.001–.404; *see also Ford*, 44 S.W.3d at 135.

73.     "Debt collection" is defined as the act or practice "in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." Tex. Fin. Code § 392.001(5).

74.     Plaintiffs are "consumers" within the meaning of Tex. Fin. Code § 392.001, and the debt in question relating to the property is a "consumer debt" within the meaning of such statute because the debt is an obligation for personal, family, or household purposes. *See id.* at § 392.001(1), (2).

75.     A "creditor" is "a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers." *Id.* at § 392.001(3). On the other hand, a "debt collector" is "a person who directly or indirectly engages in debt collection." *Id.* § 392.001(6). Wells Fargo is a debt collector participating in debt collection. *See Monroe*, 936 S.W.2d at 660 (Tex. App.—Dallas 1996, writ dism'd w.o.j.) (TDCA applies to entities attempting to collect their own debts).

---

[13] 12 U.S.C. § 2605(f)(3).

76.    To violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading. *Shellnut v. Wells Fargo Bank, N.A.*, 2017 WL 1538166, at *11 (Tex. App.—Fort Worth Apr. 27, 2017, no pet. h.); *see also Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015).

77.    Wells Fargo's acts, omissions, and conduct as alleged *supra* constitute violations of the TDCA which provide that in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:

> (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding. Tex. Fin. Code Ann. § 392.304(a)(8).
>
> (14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business. Tex. Fin. Code Ann. § 392.304(a)(14).
>
> (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer. Tex. Fin. Code § 392.304(a)(19).

78.    Wells Fargo violated § 392.304(a)(8) when it added certain sums to the principal amount of the Loan and advised Plaintiffs with inconsistent reinstatement amounts, *see* Ex. D, E, and "led [Plaintiffs] to think differently with respect to the character, extent, amount, or status of [their] debt." *Ingram v. Beneficial Fin., Inc.*, No. 3:13-CV-4037-L, 2015 WL 1443110, at *9 (N.D. Tex. Mar. 30, 2015); *see also Shellnut*, 2017 WL 1538166, at *11 ("[a] collection notice...affirmatively misstating the amount owed on a debt constitutes a misleading assertion regarding the amount of that debt under the TDCA").

79.    Wells Fargo violated Tex. Fin. Code Ann. § 392.304(a)(14) when it offered loan modification options to Plaintiffs, but noticed the foreclosure sale of the Property. Wells Fargo

led Plaintiffs to believe that providing all the information and documents needed for a loan modification would prevent foreclosure.

80.     Section 392.304(a)(19) is a catch-all provision that prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Birchler v. JPMorgan Chase Bank,* No. 4:14-CV-81-ALM, 2015 WL 1939438, at \*5 (E.D. Tex. Apr. 29, 2015). Wells Fargo violated § 392.304(a)(19) when it failed to transfer Plaintiffs pending loan modification application to SLS and when it failed to coordinate with SLS as the transferor servicer. Wells Fargo "conceivably have led [Plaintiffs] to believe that [their] debt was due when in fact it was not." *See Sanchez v. Bank of Am., N.A.,* No. 3:14-cv-2571, 2015 WL 418084, at \*4 (N.D. Tex. Jan. 30, 2015).

81.     Pursuant to such violations of law, Plaintiffs are entitled to relief provided by Tex. Fin. Code § 392.403, including but not limited to (1) recovery of all actual damages sustained as a result of violations of such provisions of the TDCA; (2) all actual direct and indirect economic damages, including but not limited to damages for loss of credit and damage to credit reputation; and (3) damages for mental anguish and emotional distress. Additionally, Plaintiffs seek damages resulting from payment of excess or additional interest, and any consequential damages.

82.     Also, pursuant to Tex. Fin. Code § 392.403, Plaintiffs are entitled to recover their attorneys' fees reasonably related to the amount of work performed and costs, for all actions in the trial court, the Court of Appeals, and the Supreme Court.

## VI.   REMEDIES

### *Accounting*

83.   Plaintiffs request an Order for an accounting of all transactions on their Loan.

### *Specific Performance*

84.   As set forth above, the Deed of Trust and RESPA constitute an integrated contract.

85.   SLS failed to comply with RESPA, which constitute a breach of the Deed of Trust contract. Plaintiffs therefore request that this Court order SLS to comply with RESPA and accordingly evaluate Plaintiffs' loan modification options. The Court's failure to grant Plaintiffs' request for specific performance would harm Plaintiffs, and no amount of damages could compensate them for their loss.

## VII.   DAMAGES

86.   As a proximate result of the above, Plaintiffs have incurred, or will incur the following actual damages:

   a.   reasonable and necessary attorneys' fees and costs in the proceedings before this Court, and those fees required for any appeal to the Court of Appeals, and thereafter to the Supreme Court;

   b.   actual damages as a result of SLS's breach of contract; and

   c.   the value of the time lost in attempting to correct Defendants' errors.

87.   Plaintiffs also seek exemplary damages for Defendants' outrageous and malicious conduct. Defendants attempt to foreclose on Plaintiffs' Property without affording them the options under RESPA that they are entitled to to keep their home. *See Ellis County State Bank v. Keever*, 936 S.W.2d 683 (Tex. App.—Dallas 1996, no writ).

88.   Plaintiffs seek monetary relief over $200,000 but not more than $1,000,000.

## VIII.   CONDITIONS PRECEDENT

89.     All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## IX.   DEMAND FOR JURY

90.     Plaintiffs demand a jury trial and tender the appropriate fee.

## X.   REQUEST FOR DISCLOSURE

91.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs hereby request Defendants to disclose, within 50 days of service of this request, the information and material described in Rule 194.2 (a)-(1).

## XI.   NOTICE OF INTENT TO USE DEFENDANTS' DOCUMENTS

92.     Plaintiffs hereby give notice of their intention to use at trial or any hearing any document produced by Defendants in response to written discovery.

## XII.   APPLICATION FOR TEMPORARY RESTRAINING ORDER

93.     A trial court may grant equitable relief when a dispute involves real property. *Butnaru v. Ford Motor Company*, 84 S.W.3d 198 (Tex. 2002).  This request for injunctive relief is so that justice may be done, not merely for delay. Plaintiffs have performed all conditions precedent and are ready, willing, and able to perform such equitable acts as the court deems necessary.

94.     Despite the wrongful nature of the aforementioned foreclosure, SLS is proceeding to foreclose on the Loan and sell the Property. Unless restrained, SLS will proceed with this action. There is no remedy at law that is clear and adequate to protect Plaintiffs' property interests against SLS's wrongful foreclosure of the Property, because such an action will deprive Plaintiffs of the use and enjoyment of their home. Further, Plaintiffs will suffer irreparable harm

and the issues and rights sought to be adjudicated will become moot unless such action by SLS is restrained and enjoined. *Butnaru,* 84 S.W.3d at 210.

95.     Plaintiffs request that the Restraining Order and Temporary Injunction be made into a permanent injunction.

### XIII.  PRAYER

**WHEREFORE,** Plaintiffs request that:

a.  the Court issue a temporary restraining order without notice to SLS, restraining SLS, its agents, servants, employees, attorneys, Trustees and Substitute Trustees, from directly or indirectly foreclosing on the property or selling or attempting to sell the Property.

b.  Defendants be cited to appear and show cause, and that upon hearing, a temporary injunction be issued enjoining SLS, its agents, attorneys, servants, and employees, Trustees and Substitute Trustees, from directly or indirectly foreclosing on the Property or selling or attempting to sell the Property.

c.  the temporary injunction remain in place and that upon final trial a permanent injunction be issued enjoining SLS, its agents, attorneys, servants, and employees, Trustees and Substitute Trustees, from directly or indirectly foreclosing on the property, or from selling or attempting to sell the property.

d.  Plaintiffs recover actual damages, out-of-pocket damages, including but not limited to damages for clouding the title/slander of title concerning said residence, harm to credit reputation, credit worthiness, and credit history, mental anguish, emotional distress, anxiety, depression, humiliation, and the value of time lost trying to remedy the problem, against Defendants.

e.  Plaintiffs have reasonable and necessary attorneys' fees in this action and resulting writs or appeals; or, in the alternative, Plaintiffs' attorneys have costs of court and reasonable and necessary attorneys fees in this action and resulting writs or appeals, and the same be taxed as costs and ordered paid directly to Plaintiffs' attorneys, who may enforce the order for fees in their own name.

f.  Defendants be ordered to render an accounting to Plaintiffs of the amounts paid and owed.

g. SLS be ordered to specifically perform pursuant to RESPA; and

h. such other and further relief in equity and at law to which Plaintiffs may be justly entitled.

Respectfully submitted,

/s/   David M. Vereeke
J.B. Peacock, Jr.
State Bar No. 15678500
David M. Vereeke
State Bar No. 20457500
Heliane Fabian
State Bar No. 24109850
**GAGNON, PEACOCK & VEREEKE, P.C.**
1349 Empire Central Drive
Suite 500, Lock Box 56
Dallas, Texas 75247
Telephone:  (214) 824-1414
Facsimile:  (214) 824-5490
Email:  attorneys@gapslaw.com

**ATTORNEYS FOR PLAINTIFFS**

STATE OF TEXAS          §
COUNTY OF Dallas        §

## VERIFICATION

BEFORE ME, the undersigned Notary Public, on this day personally appeared Robyn

Peters who being by me duly sworn on her oath deposed and said that she is a Plaintiff in the

above-entitled and numbered cause; that she has read the above and foregoing Plaintiffs'

Verified Original Petition and Application for Temporary Restraining Order; and that the facts

contained therein are within her personal knowledge and are true and correct.



X _____
Robyn Peters

SUBSCRIBED AND SWORN TO BEFORE ME on the 29th day of May, 2019,
to certify which witness my hand and official seal.

TERESA E. DAVIS
Notary Public, State of Texas
Comm. Expires 10-19-2022
Notary ID 3035085

_____
Notary Public

STATE OF TEXAS         §
COUNTY OF _____ §

## VERIFICATION

BEFORE ME, the undersigned Notary Public, on this day personally appeared James

Peters who being by me duly sworn on his oath deposed and said that he is a Plaintiff in the

above-entitled and numbered cause; that he has read the above and foregoing Plaintiffs' Verified

Original Petition and Application for Temporary Restraining Order; and that the facts contained

therein are within his personal knowledge and are true and correct.

_____
James Peters

SUBSCRIBED AND SWORN TO BEFORE ME on the 30 day of May, 2019, to certify
which witness my hand and official seal.

_____
Notary Public



PHILIP CAGE
Notary Public, State of Texas
Comm. Expires 05-31-2020
Notary ID 130682082

AFTER RECORDING MAIL TO:
JAMES W. PETERS, JR.
313 COUNTY ROAD 3598
BOYD, TX 76023-4006

Prepared By:
Robertson & Anschutz, P.C.
10333 Richmond Avenue, Suite 550
Houston, TX 77042

**Guardian Title Co.**

GF 20052795

### GENERAL WARRANTY DEED

## NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

| STATE OF TEXAS | § | | |
|---|---|---|---|
| | § | ss.: | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF WISE | § | | |

THAT **DAVID LYNN EVERITT** and **MARY LOUISE EVERITT, HUSBAND AND WIFE**, of _____ Wise County, _Texas_, hereinafter called "Grantor", for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to Grantor in hand paid by **JAMES W. PETERS, JR.**, hereinafter called "Grantee", whose mailing address is **313 COUNTY ROAD 3598, BOYD, TX 76023-4006**, the receipt and sufficiency of which is hereby acknowledged, and the further consideration of the execution and delivery by said Grantee of one certain Promissory Note in the principal sum of One Hundred Fifty-Six Thousand Seven Hundred Fifty Dollars ($156,750.00), of even date herewith, payable to the order of PrimeLending, a PlainsCapital Company, hereinafter called "Mortgagee", bearing interest at the rate therein provided; said Note containing attorney's fee clause and various acceleration of maturity clauses in case of default, and being secured by Vendor's Lien and Superior Title retained herein in favor of said Mortgagee, and also being secured by Deed of Trust of even date herewith from Grantee to **Thomas F. Vetters**, Trustee, Grantor has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY, unto said Grantee, the following described Property located in WISE County, Texas, to-wit:

    **See Exhibit "A" attached hereto and made a part hereof for all purposes**

    Together with Grantor's right, title and interest in all system memberships and/or ownership certificates in any non-municipal water and/or sewer systems serving said Property.

    Mortgagee has, at the special instance and request of Grantee, paid to Grantor a portion of the purchase price of the Property hereinabove described, as evidenced by the above described Note, and thus said Vendor's Lien and Deed of Trust Lien against said Property securing the payment of said Note, are hereby assigned, transferred and delivered to Mortgagee, Grantor hereby conveying to said Mortgagee the said Superior Title to said property, subrogating said Mortgagee to all the rights and remedies of Grantor in the Property by virtue of said liens.

(R&A) RA0072947 - wdindv.tx - Rev. 06/22/2005          Page 1

**EXHIBIT**

**A**



TO HAVE AND TO HOLD the above described Property, together with all and singular the rights and appurtenances thereunto in anywise belonging to said Grantee, Grantee's heirs and assigns, forever, AND Grantor does hereby bind Grantor, Grantor's successors and assigns, to WARRANT and FOREVER DEFEND all and singular the said Property unto said Grantee, Grantee's heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

This conveyance is made subject to all and singular the restrictions, easements, exceptions, conditions and covenants, if any, applicable to and enforceable against the above-described Property as shown by the records of said County, as well as ad valorem taxes for current and subsequent years.

But it is expressly agreed that the Vendor's Lien and Superior Title is retained in favor of the Payee of said Note against the above-described Property and improvements, until said Note and all interest thereon shall have been fully paid according to the terms thereof, when this Deed shall become absolute.

When this Deed is executed by more than one person, or when the Grantee is more than one person, the instrument shall read as though pertinent verbs, nouns and pronouns were changed correspondingly, and when executed by or to a corporation, the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "successors and assigns".

EXECUTED this 17th day of NM , 2005

_____     11-17-05
Seller: **DAVID LYNN EVERITT**          Date

_____     17 November 05
Seller: **MARY LOUISE EVERITT**          Date

## INDIVIDUAL(S) ACKNOWLEDGEMENT

STATE OF TEXAS, _____*Wise*_____ County ss:

. This instrument was acknowledged before me on _____*Mar. 17*_____, _____*2005*_____, by **DAVID LYNN EVERITT and MARY LOUISE EVERITT**.

_____
Notary Public

_____
Printed Name of Notary Public

JO ANN HAKE
Notary Public, State of Texas
My Commission Expires 04-26-2008

(R&A) RA0072947 – wdindv.tx – Rev. 06/22/2005          Page 3

Loan No.:   0878

## EXHIBIT "A"

Description for a 13.00 acre tract of land out of the JOSE MARIA MORA SURVEY, Abstract No. 541, Wise County, Texas, said tract being a portion of Volume 233, Page 263, D.R.W.C.T.;

COMMENCING at a 1" pipe found, said pipe being by deed call East, 1665.40 varas from the Southwest corner of said MORA SURVEY, thence East 1423.40 feet, thence N 00°15'52" E, 995.32 feet to a ½" iron set for the POINT OF BEGINNING;

THENCE S 89°30'07" W, 348.25 feet to a ½" iron set;

THENCE N 00°15'52" E, at 1601.20 feet passing a ½" ref. iron set and continuing in all 1626.20 feet to a point in the approximate center of County Road No. 3598;

THENCE N 89°30'07" E, with the approximate center of said County Road No. 3598, 348.25 feet to a 60d nail found, said nail being for the Northwest corner of Volume 381, Page 403, R.R.W.C.T.;

THENCE S 00°15'52" W, with the West line of said Volume 381, Page 403, 1626.20 feet to the POINT OF BEGINNING and containing 13.00 acres of land.

(R&A) RA0072947 - exhibitA.ra - 12/30/2004

---

## WATER DISTRICT NOTICE
### *Notice To Purchaser*
### GF#20052795

---

**The real property**, described within this document, which you are about to purchase is located in the **WISE COUNTY WATER CONTROL & IMPROVEMENT DISTRICT #1.** The district has taxing authority separate from any other taxing authority, and may, subject to voter approval, issue an unlimited amount of bonds and levy an unlimited rate of tax in payment of such bonds. As of this date, the most recent rate of taxes levied by the district on real property located in the district is $0.0150 on each $100.00 of assessed valuation. If the district has not yet levied taxes, the most recent projected rate of debt service tax, as of this date is $(N/A) on each $100.00 of assessed valuation. The total amount of bonds which has been approved by the voters and which have been or may, at this date, be issued is $(N/A) and the aggregate initial principal amounts of all bonds issued for one or more of the specified facilities of the district and payable in whole or in part from the property taxes is $(N/A).

The district has the authority to adopt and impose a standby fee on property in the district that has water, sewer, sanitary or drainage facilities and services available but not connected and which does not have a house, building, or other improvement located thereon and does not substantially utilize the utility capacity available to the property. The district may exercise the authority without holding an election on the matter. As of this date, the amount of the standby fee is $(N/A*). An unpaid standby fee is a personal obligation of the person that owed the property at the time of imposition and is secured by a lien on the property. Any person may request a certificate from the district stating the amount, if any, of the unpaid standby fees on a tract of property in the district.

The purpose of this district is to provide water, sewer, drainage, or flood control facilities and services within the district through the issuance of bonds payable in whole or in part from the property taxes. The cost of these utility facilities is not included in the purchase price of your property, and these utility facilities are owned or to be owned by the district. **PURCHASER IS ADVISED THAT THE INFORMATION SHOWN ON THIS FORM IS SUBJECT TO CHANGE BY THE DISTRICT AT ANY TIME. THE DISTRICT ROUTINELY ESTABLISHED TAX RATES DURING THE MONTHS OF SEPTEMBER THROUGH DECEMBER OF EACH YEAR, EFFECTIVE FOR THE YEAR IN WHICH THE TAX RATES ARE APPROVED BY THE DISTRICT. PURCHASER IS ADVISED TO CONTACT THE DISTRICT TO DETERMINE THE STATUS OF ANY CURRENT OR PROPOSED CHANGES TO THE INFORMATION SHOWN ON THIS FORM.**

The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or prior to the execution of a binding contract for the purchase of the real property described in such notice or at closing of purchase of the real property.

**SELLER(S):**

_____    Date  11-17-05
David Lynn Everitt

*Mary L. Everitt*    Date  17 November 05
**Mary Louise Everitt**

**ACKNOWLEDGMENT (SELLERS):**

THE STATE OF TEXAS    §

COUNTY OF WISE    §

This instrument was acknowledged before me on  November 17, 2005, by David Lynn Everitt and Mary Louise Everitt, proven to me to be persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

_____
**Notary Public of the State of Texas**

**PURCHASER(S)**

Jams w Putus/                                          Date   11-17-2005
James W. Peters Jr.

_____   Date_____

**ACKNOWLEDGMENT - PURCHASER(S)**

**THE STATE OF TEXAS**   §

**COUNTY OF WISE**   §

This instrument was acknowledged before me on ____Nov 17____, 2005, by James W. Peters Jr. and, proven to me to be person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

_____
**Notary Public of the State of Texas**

JO ANN HALE
Notary Public, State of Texas
My Commission Expires 04-20-2009

GUARDIAN TITLE COMPANY
1451 W US 380 BUSINESS, SUITE 7
PO BOX 908
DECATUR, TEXAS  76234

Filed for Record in:
Wise County
Honorable Honorable Sherry Parker-Lenon
County Clerk
On: Nov 23,2005 at 11:36A

As a
Official Records

Document Number:      378914

Amount                25.00

Receipt Number -      146559
By
Diana Pate, Deputy

ANY PROVISION HEREIN WHICH RESTRICTS THE
SALE, RENTAL, OR USE OF THE DESCRIBED
REAL PROPERTY BECAUSE OF COLOR OR RACE IS
INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

STATE OF TEXAS            COUNTY OF WISE

I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of: Wise County
as stamped hereon by me.

Nov 23,2005

By, _____ Deputy

Honorable Sherry Parker-Lenon,  County Clerk
Wise County

# NOTE

November 16, 2005

313 COUNTY ROAD NO. 35●●
BOYD, TX 76023-4006    ORIGINAL
[Property Address]

BRIDGEPORT, Texas

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $156,750.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is PrimeLending, a PlainsCapital Company. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First day of each month beginning on January 01, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at
PrimeLending, a PlainsCapital Company
18111 Preston Road, Ste. 900
Dallas, TX 75252
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,029.74.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Loan No.              (R&A) RA0072947 - ni3200.mis - Rev. 09/29/2005

Form 3200  1/01(Page 1 of 3 Pages)





EXHIBIT
B

**(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)    No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01(Page 2 of 3 Pages)
loan #k              (R&A) RA9072947 - nt3200.mls - Rev. 06/29/2005

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

ORIGINAL

_____  (Seal)
JAMES W. PETERS, JR.              -Borrower
Social Security Number

[Sign Original Only]

**PAY TO THE ORDER OF**

WELLS FARGO BANK, N.A.                    **WITHOUT RECOURSE**

PrimeLending, a PlainsCapital Company

By: _____

Name: **Angie Carmack**

Title: **Vice President**

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By _____
William G. Arends
Assistant Vice President

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200  1/01(Page 3 of 3 Pages)
Loan No            (R&A) RA0072947 - m3200.mls - Rev. 06/29/2005

After Recording Mail To:
PrimeLending, a PlainsCapital Company
ATTN: Final Documents
P.O. Box 797968
Dallas, TX 75379-7968

Prepared By:
Robertson & Anschutz, P.C.                                    **Guardian Title Co.**
10333 Richmond Avenue, Suite 550
Houston, TX 77042                                             **GF_**

## DEED OF TRUST

### NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

Loan No..

MIN No

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated  November 16, 2005,  together with all Riders to this document.
(B)    "Borrower" is JAMES W. PETERS, JR. and ROBYN PETERS, husband and wife.  Borrower is the grantor under this Security Instrument.
(C)    "Lender" is  PrimeLending, a PlainsCapital Company.  Lender is a  Corporation  organized and existing under the laws of  the  State of Texas.  Lender's address is  18111 Preston Road, Ste. 900, Dallas, TX 75252.  Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D)    "Trustee" is  Thomas F. Vetters.  Trustee's address is  10333 Richmond Avenue, Suite 550, Houston, TX 77042.
(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)    "Note" means the promissory note signed by Borrower and dated November 16, 2005. The Note states that Borrower owes Lender  One Hundred Fifty-Six Thousand Seven Hundred Fifty  Dollars (U.S. $156,750.00 ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than December 01, 2035.
(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:
--No Riders Required--

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                                         (Page 1 of 13 pages)
(R&A) RA0072947 - siemers.tx - Rev 11/15/2005





EXHIBIT

C

(K)     "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)     "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)     "Escrow Items" mean those items that are described in Section 3.

(N)     "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)     "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)     "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)     "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)     "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of WISE:

**See Exhibit "A" attached hereto and made a part hereof for all purposes**

which currently has the address of 313 COUNTY ROAD NO. 3598, BOYD, TX 76023-4006 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                                          (Page 2 of 13 pages)
(R&A) RA0072947 - zkmcrx.tx - Rev. 11/15/2005

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                                          (Page 3 of 13 pages)
(R&A) RA#072947 - slomens.sx - Rev. 11/15/2005

any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                                          (Page 4 of 13 pages)
(R&A) RA0072947 - sistaurs.tx - Rev. 11/15/2005

Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                    (Page 5 of 13 pages)
(R.EA) RA0072947 - slcsaeta.tx - Rev. 11/15/2003

Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                                                      (Page 6 of 13 pages)
(R&A) RA0072047 - siomer.a.tx - Rev. 11/15/2005

Mortgage Insurance. Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has — if any — with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01 (Page 7 of 13 pages)
(R&A) RA0072947 - slomert.tx - Rev. 11/15/2005

otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                                          (Page 8 of 13 pages)
(REA) RA00/72947 - sicuern.tx - Rev, 11/15/2005

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044  1/01                                    (Page 9 of 13 pages)
(R&A) RA0072947 - Skmara.tx - Rev. 11/15/2005

as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01 (Page 10 of 13 pages)
(R&A) RA0072947 - slamert.tx - Rev. 11/15/2005

to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property without covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                                                      (Page 11 of 13 pages)
(R&A) RA0072947 - sisoners.px - Rev. 11/15/2005

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:

[ X ]    Purchase Money.

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ]    Owelty of Partition.

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ]    Renewal and Extension of Liens Against Homestead Property.

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ]    Acknowledgement of Cash Advanced Against Non-Homestead Property.

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JAMES W. PETERS, JR.                -Borrower

_____ (Seal)
ROBYN PETERS

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                       (Page 12 of 13 pages)
(R&A) 8A0072947 - skancra.tx - Rev. 11/15/2005

STATE OF TEXAS, _____Wise_____ County

This instrument was acknowledged before me on _Nov. 17_, _2005_, by JAMES W. PETERS, JR. and ROBYN PETERS.

Ann Xake

Notary Public

JO ANN HAKE
Notary Public, State of Texas
My Comm. Expires: 04-04-2007

Printed Name
My Commission Expires:

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01                    (Page 13 of 13 pages)
(R&A) RA0072947 - sigments.tx - Rev. 11/15/2005

Loan No.:

## EXHIBIT "A"

Description for a 13.00 acre tract of land out of the JOSE MARIA MORA SURVEY, Abstract
No. 541, Wise County, Texas, said tract being a portion of Volume 233, Page 263, D.R.W.C.T.;

COMMENCING at a 1" pipe found, said pipe being by deed call East, 1665.40 varas from the
Southwest corner of said MORA SURVEY, thence East 1423.40 feet, thence N 00°15'52" E,
995.32 feet to a ½" iron set for the POINT OF BEGINNING;

THENCE S 89°30'07" W, 348.25 feet to a ½" iron set;

THENCE N 00°15'52" E, at 1601.20 feet passing a ½" ref. iron set and continuing in all 1626.20
feet to a point in the approximate center of County Road No. 3598;

THENCE N 89°30'07" E, with the approximate center of said County Road No. 3598, 348.25
feet to a 60d nail found, said nail being for the Northwest corner of Volume 381, Page 403,
R.R.W.C.T.;

THENCE S 00°15'52" W, with the West line of said Volume 381, Page 403, 1626.20 feet to the
POINT OF BEGINNING and containing 13.00 acres of land.

(R&A) RA0072947 - exhibitA.m - 12/30/2004

GUARDIAN TITLE COMPANY
1451 W US 380 BUSINESS, SUITE 7
PO BOX 908
DECATUR, TEXAS 76234

Filed for Record in:
Wise County
Honorable Honorable Harry Parker-Lane
County Clerk
On: Nov 23, 2005 at 11:35A

As a

Document Number:          378915

Amount                    42.00

Receipt Number -          145729
by
Nissa Pate, Deputy

ANY PROVISION HEREIN WHICH RESTRICTS THE
SALE, RENTAL, OR USE OF THE DESCRIBED
REAL PROPERTY BECAUSE OF COLOR OR RACE IS
INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

STATE OF TEXAS          COUNTY OF WISE

I hereby certify that this instrument was
filed on the date and time stamped hereon by me
and was duly recorded in the volume and page
of the named records of: Wise County
as stamped hereon by me.

Nov 23, 2005

by, _____ Deputy

Honorable Harry Parker-Lane, County Clerk
Wise County





**Wells Fargo Home Mortgage**
MAC X7801-03K
3476 Stateview Boulevard
Fort Mill, SC 29715

September 04, 2008

James W Peters Jr
313 County Road 3598
Boyd TX 76023



$ 5000.⁰⁰ in suspense
$ 1,694.⁰⁶ total due

Dear James W Peters Jr :

RE: Loan Number     :5679, Client 708

This letter will confirm our formal approval of a loan
modification/restructure of your mortgage loan.  To facilitate this
transaction, it was mutually agreed that a contribution of $6,694.06
would be required, which will be applied toward the accrued delinquency.

Please sign the enclosed loan modification agreement and return it,
along with any payment(s) and/or contribution due as reflected in the
terms of this letter.  If a Truth in Lending Statement and/or Financial
Worksheet is enclosed with your modification agreement, please sign and
return all items and contribution as disclosure of your interest rate
being raised through this modification.

The terms of your modification/restructure are outlined below:

1.  Due date of first payment:                    11/01/2008

2.  New principal and interest payment amount:     $1,159.34

3.  Required escrow payment based on previous analysis: $415.18,

4.  Estimated new net payment:                     $1,574.52

5.  Modified maturity date:                        05/01/2037

6.  Interest rate:                                 6.875%

7.  All late charges, NSF fees, and other fees are the responsibility
    of the borrower.

      *(Step rate changes, if applicable, will be reflected
       in the terms of the loan modification agreement.)

LC184/07R/1

**EXHIBIT**

**D**

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.

**Freddie Mac**

8250 Jones Branch Drive
McLean, VA 22102-3110

Date: September 04,2008

To:   WELLS FARGO BANK, N.A.
      Attn:    JOHN ROGERS
               3480 STATE VIEW BLVD.
               FORT MILL, SC 29715

Re:   Loan Modification Approval
      Freddie Mac Loan No.
      Servicer Loan No.
      Borrower(s) Name      JAMES PETERS JR
      Property Address      313    COUNTY ROAD NO 3598
                            BOYD, TX 760234006

Dear  JOHN ROGERS ,

We have approved your request to consider a loan modification on the referenced loan subject to the following conditions:

* We do not require an endorsement to the title policy or a new policy on this modification. In addition, the modification does not need to be recorded unless required by law in the applicable jurisdiction.

* The modified mortgage must be a fixed rate, fully amortized loan bearing interest at the following percentage. The total loan term will be extended to/reamortized over 343 months.

| Note Rate | Term | Effective Date | First Monthly PITI Payment Due |
|-----------|------|----------------|--------------------------------|
| 6.875%    | 343  | 10/01/2008     | 11/01/2008                     |

* The Freddie Mac accounting net yield (ANY) rate on the modified mortgage must be calculated by subtracting the following from the rate listed above:
  - Servicing fee of 25.0 bps or the current servicing spread prior to modification if it is lower than 25.0 bps.
  - The mortgage insurance premium if it was included in the note rate of the existing mortgage.

* Capitalization is limited to $11,603.13. You may not capitalize unpaid late charges or penalties, and interest on delinquent taxes/assessments.

* The borrower must contribute the following at or before closing (by certified funds, cashier's check, or cash):

| | |
|---|---|
| Borrower cash contribution to reduce the outstanding indebtedness | $5,389.54 |
| Closing costs for modification (title, documents, closing) (Estimate) | $0.00 |
| Processing fee for review of modification request | $0.00 |
| Borrower's first modified monthly payment (Estimate) | $1,574.52 |
| **ESTIMATED TOTAL CASH DUE FROM BORROWER** | **$6,964.06** |

* If the mortgage being modified is non-owner occupied or 2-4 unit property, an Assignment of Rent Rider (Exhibit 77 of the Guide) must be executed and attached to the Loan Modification Agreement.   If the

FHLMC Loan: .                                        Servicer Loan:

mortgage being modified is assumable, a Modification Due on Transfer Rider (Exhibit 78 of the Guide) must be executed and attached to the Loan Modification Agreement. If the borrower was previously discharged in a Chapter 7 bankruptcy proceeding, a Modification Bankruptcy Disclosure Rider (contact your NPL Representative to obtain this form) must be executed and attached to the Loan Modification Agreement.

- If the property subject to the loan modification is located in a special flood hazard area at the time of modification, flood insurance must be obtained.

- The modified mortgage must have an escrow account established for the payment of taxes and insurance.

- If the mortgage insurer has agreed to a partial claim payment, Freddie Mac agrees that any future claim payment will be reduced by the amount advanced and not yet repaid by the borrower.

- Freddie Mac must retain the first lien position and cannot have any secondary financing included in the modified mortgage balance or provide cash-out to the borrower(s). The modification must occur in accordance with all state and federal regulations.

- Notwithstanding our approval of this loan modification, Freddie Mac reserves its rights to exercise any remedies provided by the *Guide* and other purchase documents, including a repurchase of the mortgage or a call on a credit enhancement, in the event we determine that there has been a failure to comply with the requirements of the *Guide*. In addition, we reserve the right to require you to indemnify us if the the loan modification does not occur in accordance with these instructions.

- You must not delay initiation of foreclosure, suspend the foreclosure action or otherwise put the foreclosure on hold while processing this loan modification. If you believe a foreclosure sale should be postponed in order to complete the workout, you must contact at for approval.

- Additional Conditions:

If all conditions have been met, you should then:

- Prepare the Loan Modification Agreement with all applicable riders. These documents should be amended to the extent necessary to comply with local law. The borrower(s) should execute two (2) original Agreements.

- Follow the steps detailed in the attached Loan Modification Closing and Reporting Instructions. Please communicate this information to your Investor Accounting and Default Reporting Department.

All requirements for the Loan Modification Program are outlined in the Guide, beginning at Chapter B65.11. If you have any questions, please feel free to contact me at .

Sincerely,


Non-Performing Loans Department
Single Family Division




FHLMC Loan:                                           Servicer Loan

WELLS HOME
FARGO MORTGAGE

Wells Fargo Home Mortgage
MAC x9999-01N
1000 Blue Gentian Rd.
Ste 300
Egan, MN 55121-1786

Tel: 800 416 1472

November 16, 2010

James W Peters Jr
313 County Road 3598
Boyd TX 76023

Dear James W Peters Jr :

RE:   Loan Number        :5679                    Client 708

At Wells Fargo, our goal is simple. We want to ensure that you have every opportunity to retain your home. Based on our telephone conversation and the financial information you provided, we are considering a program that may assist you in curing the delinquency on your loan. This program, known as a loan modification, will reschedule your loan balance to set up a new payment and provide you with the opportunity for a fresh start. Please be advised this letter is not a guarantee or approval of the loan modification. To continue the review, you must return the following:

- An initial payment of $$2818.00, that is due on 2010-11-26. This payment will be applied to any fees or costs associated with this modification, and may only cover these fees and costs. Any remaining balance from the initial payment will be applied to outstanding delinquent payments. If the amount mentioned is collected during your conversation with the Wells Fargo representative please disregard the due date listed above. If you are not approved for a loan workout, the initial payment will be returned to you.

- The enclosed financial statement. It is important that this information is accurate and complete. Any information that is left blank or is not completely correct, may delay the processing of this modification.

- Most recent paycheck stub(s). This is required for each person who is listed on the mortgage or deed or trust for this loan. If you receive additional income from any other sources that you would like us to consider, proof of that income must also be included. If you are self-employed, please submit your most recent tax return(s) and a copy of your most recent Profit and Loss statement for consideration.

Additional information may be requested throughout the review process depending upon the type of loan.

LM116/HUH/1

EXHIBIT

E

Together we'll go far

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.

**WELLS FARGO | HOME MORTGAGE**

Wells Fargo Home Mortgage
MAC x9999-01N
1000 Blue Gentian Rd.
Ste 300
Egan, MN 55121-1786

### FINANCIAL WORKSHEET

Date:  November 16, 2010                    Loan Number:                    :5679

Mortgagor : James W Peters Jr
=============================================================
\*\*\*  VERIFY AND/OR UPDATE INFORMATION LISTED BELOW IN ITEMS A - F \*\*\*

A.) VERIFY HOW MANY INDIVIDUALS
    LIVE IN YOUR HOME:            CURRENT:        BORROWER UPDATE(S):
                                     3
                                  _____     _____

B.) VERIFY CURRENT
    MONTHLY INCOME:    BORROWER      BORROWER      CO-BRWR       CO-BRWR
                       INCOME:       UPDATE(S):    INCOME:       UPDATE(S):

    Net Salary/Wages: $   3,400.00  $_____  $      .00  $_____
    Other Income:     $   1,083.33  $_____  $      .00  $_____
    (EXAMPLE(S): Commission/Disability/
    Social Security/Child Support/Alimony/
    Rental Property/Rent from Roommate)

                                                 MONTHLY        BORROWER
                                                 PAYMENT:       UPDATE(S)
C.) VERIFY CURRENT MONTHLY EXPENSES:

    1)  Existing Mortgage Payment          $   1,592.46  $_____
    2)  Other Mortgage Loans               $        .00  $_____
    3)  Installment/Car/Boat/RV/Loans:     $        .00  $_____
    4)  Credit Cards (examples below)
        Visa/MC/Discover or Store          $        .00  $_____
    5)  Lines of Credit (example below)
        credit line/home equity line       $        .00  $_____
    6)  Charge Off Accounts:
        (accounts written off by lender)   $        .00  $_____
    7)  Other credit accounts              $        .00  $_____
    8)  Credit Accounts that are past due
        for more than 5 months
    9)  Food                               $     250.00  $_____
    10) Utilities                          $     200.00  $_____
    11) Transportation                     $     300.00  $_____
    12) Child Care/Alimony                 $        .00  $_____
    13) Personal/Family Loan &/or Tuition  $        .00  $_____
    14) Medical expenses not covered by insur $     .00  $_____
    15) Cell Phone/Cable/Internet/Satellite $    100.00  $_____
    16) Association Fees or Monthly Dues    $        .00  $_____
    17) Dry Cleaning/Laundry:Uniforms/Clothing $   .00  $_____

LM201/HUH/1



Together we'll go far

**PLEASE CAREFULLY READ THIS LETTER**
**YOU ARE BEING OFFERED MONEY TO VOLUNTARILY VACATE THIS HOUSE**

JACK O'BOYLE & ASSOCIATES
Attorneys and Counselors
P.O. Box 815369 Dallas, Texas 75381
972-247-0692 - 972-247-0642 Facsimile
March 4, 2011

**VIA OVERNIGHT MAIL and FIRST CLASS MAIL**
JAMES PETERS JR
and/or All Current Occupants of
313 CR 3598
Boyd, TX 76023
Re:   313 CR 3598, Boyd, Texas 76023

```
┌──────────────┐
│   EXHIBIT    │
│              │
│      F       │
└──────────────┘
```

Dear Mr. James Peters Jr and/or All Occupants:

The Federal Home Loan Mortgage Corporation (more commonly known as Freddie Mac) now owns the above described property as a result of a foreclosure sale. This firm has been retained to institute an eviction proceeding to obtain possession of the property.

If you are a *"bona fide"* tenant as described under Title VII of the "Helping Families Save Their Homes Act of 2009" and can provide a copy of your lease agreement and proof of rental payment for 2010/2011 or other evidence of tenancy, please contact our office immediately, so your lease can be reviewed and determined eligible under the Act.

If you are **not** a *"bona fide"* tenant or unable to provide evidence of a prior lease agreement, you still have the following options available to you prior to the initiation of eviction proceedings.

1.   **RELOCATION ASSISTANCE:**
     If you agree to voluntarily vacate the property, Freddie Mac will offer you cash towards relocation expenses. This amount is subject to the property being vacated within a stated timeframe and is paid <u>after</u> you vacate the property. Only one payment per household is provided for relocation assistance, regardless of the number of occupants. The property must be vacated by all occupants and be in broom clean condition, free of interior and exterior trash and debris, all personal belongings must be removed from the property and yard must be mowed and in a presentable manner. The Relocation Assistance Agreement accompanying this letter outlines the amount to be paid and the timeframe required. As the attached agreement legally binds all occupants to vacate the property, all adults currently occupying the property must sign the agreement.

2.   **MONTH-TO-MONTH LEASE:**
     You may have the option of remaining in the property on a new month-to-month lease. To qualify for this option, you must agree to the following:
     a)   Demonstrate the ability to pay the market rent as determined by Freddie Mac;
     b)   Allow an inspector to enter, inspect, and photograph the property;
     c)   Sign a separate lease agreement;
     d)   Sign a property condition disclosure at the time of the inspection; and
     e)   Allow future showings of the property to prospective buyers and real estate agents.

If you wish to accept either one of these offers YOU MUST RESPOND TO THIS OFFICE WITHIN 10 DAYS from the date of this letter. Thank you.

Sincerely yours,

*Jack O'Boyle*

Jack O'Boyle

**Barrett Daffin Frappier Turner & Engel, LLP**
A Partnership Including Professional Corporations
ATTORNEYS AND COUNSELORS AT LAW
4004 Belt Line Road, Suite 100
Addison, Texas 75001
Telephone: (972) 419-1163
Telecopier: (972) 386-7673

May 07, 2019

Certified Mail 7160 9668 9670 8736 8267
JAMES W. PETERS, JR.
313 COUNTY ROAD NO. 3598
BOYD, TX 76023

**EXHIBIT**

**G**

RE:     Mortgage Servicer:     SPECIALIZED LOAN SERVICING LLC
        Loan No.:               ******9091
        BDFTE No.:              20100169814123

## NOTICE OF ACCELERATION

This law firm represents SPECIALIZED LOAN SERVICING LLC, the Mortgage Servicer, in its mortgage banking activities in the State of Texas. We have been authorized by the Mortgage Servicer to initiate legal proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan (the "Debt").

SPECIALIZED LOAN SERVICING LLC is acting as the Mortgage Servicer for SPECIALIZED LOAN SERVICING LLC, who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan. SPECIALIZED LOAN SERVICING LLC, as Mortgage Servicer, is representing the Mortgagee, whose address is:

        SPECIALIZED LOAN SERVICING LLC
        c/o SPECIALIZED LOAN SERVICING LLC
        8742 LUCENT BLVD., SUITE 300
        HIGHLANDS RANCH, CO 80129

The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan.

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

This letter is formal notice of the following:

1.   Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt.

2.   On June 04, 2019, as designated on the enclosed Notice of Trustee's Sale, the Trustee, or the Substitute Trustee, will sell at the Courthouse of WISE County, Texas in the area designated by the Commissioner's Court of such County, or if no area is designated by the Commissioner's Court, in the usual and customary place in that County, to the highest bidder for cash, the Real Estate described in the enclosed Notice.

3.   All of the obligors and guarantors (if any) of the Debt have the right to reinstate the loan as provided in the Deed of Trust and as provided by applicable Texas law. Payment must be made in certified funds, cashier's check or money order(s).

4.   All of the obligors and guarantors (if any) have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have.

**Assert and protect your rights as a member of the armed forces of the United States. If you or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

313 COUNTY ROAD NO. 3598
BOYD, TX 76023

20100169814123

### NOTICE OF [SUBSTITUTE] TRUSTEE'S SALE

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

1.  **Date, Time, and Place of Sale.**

    Date:   June 04, 2019
    Time:   The sale will begin at 1:00 PM or not later than three hours after that time.
    Place:  THE DOOR OF THE FIRST FLOOR IN THE SOUTHEAST CORNER OF THE WISE COUNTY COURTHOUSE OR AS DESIGNATED BY THE COUNTY COMMISSIONERS or as designated by the county commissioners.

2.  **Terms of Sale.** Cash.

3.  **Instrument to be Foreclosed.** The Instrument to be foreclosed is the Deed of Trust or Contract Lien dated November 16, 2005 and recorded in Document VOLUME 1621, PAGE 195 real property records of WISE County, Texas, with JAMES W. PETERS, JR. AND ROBYN PETERS, grantor(s) and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE, mortgagee.

4.  **Obligations Secured.** Deed of Trust or Contract Lien executed by JAMES W. PETERS, JR. AND ROBYN PETERS, securing the payment of the indebtednesses in the original principal amount of $156,750.00, and obligations therein described including but not limited to the promissory note and all modifications, renewals and extensions of the promissory note. SPECIALIZED LOAN SERVICING LLC is the current mortgagee of the note and Deed of Trust or Contract Lien.

5.  **Property to Be Sold.** The property to be sold is described in the attached Exhibit A.

6.  **Mortgage Servicer Information.** The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the lien securing the Property referenced above. SPECIALIZED LOAN SERVICING LLC, as Mortgage Servicer, is representing the current mortgagee, whose address is:

c/o SPECIALIZED LOAN SERVICING LLC
8742 LUCENT BLVD., SUITE 300
HIGHLANDS RANCH, CO 80129



NTSS20100169814123

FCTX_NTSS.rpt (03/28/2019)-S Ver-01

Page 1 of 3

313 COUNTY ROAD NO. 3598
BOYD, TX 76023

20100169814123

20100169814123

WISE

 **EXHIBIT "A"**

DESCRIPTION FOR A 13.00 ACRE TRACT OF LAND OUT OF THE JOSE MARIA MORA SURVEY, ABSTRACT NO. 541, WISE COUNTY, TEXAS, SAID TRACT BEING A PORTION OF VOLUME 233, PAGE 263, D.R.W.C.T.;

COMMENCING AT A 1" PIPE FOUND, SAID PIPE BEING BY DEED CALL EAST, 1665.40 VARAS FROM THE SOUTHWEST CORNER OF SAID MORA SURVEY, THENCE EAST 1423.40 FEET, THENCE N 00 DEG. 15' 52" E, 995.32 FEET TO A 1/2" IRON SET FOR THE POINT OF BEGINNING;

THENCE S 89 DEG. 30' 07" W, 348.25 FEET TO A 1/2" IRON SET;

THENCE N 00 DEG. 15' 52" E, AT 1601.20 FEET PASSING A 1/2" REF. IRON SET AND CONTINUING IN ALL 1626.20 FEET TO A POINT IN THE APPROXIMATE CENTER OF COUNTY ROAD NO. 3598;

THENCE N 89 DEG. 30' 07" E, WITH THE APPROXIMATE CENTER OF SAID COUNTY ROAD NO. 3598, 348.25 FEET TO A 60D NAIL FOUND, SAID NAIL BEING FOR THE NORTHWEST CORNER OF VOLUME 381, PAGE 403, R.R.W.C.T.;

THENCE S 00 DEG. 15' 52" W, WITH THE WEST LINE OF SAID VOLUME 381, PAGE 403, 1626.20 FEET TO THE POINT OF BEGINNING AND CONTAINING 13.00 ACRES OF LAND. MORE OR LESS.

JUN 0 3 2019

CAUSE NO. CV19-05-446

| | | |
|---|---|---|
| **JAMES W. PETERS, JR. and** | § | **IN THE DISTRICT COURT** |
| **ROBYN PETERS,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **271st JUDICIAL DISTRICT** |
| | § | |
| **SPECIALIZED LOAN SERVICING, LLC** | § | |
| **and WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| *Defendants.* | § | **WISE COUNTY, TEXAS** |

**DEFENDANT, SPECIALIZED LOAN SERVICING, LLC'S
ORIGINAL ANSWER TO PLAINTIFFS' VERIFIED ORIGINAL PETITION,
REQUEST FOR DISCLOSURE, AND APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND COUNTERCLAIMS AGAINST PLAINTIFFS**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **SPECIALIZED LOAN SERVICING, LLC,** Defendant in the above-styled and numbered cause, and files its Original Answer to Plaintiffs' Verified Original Petition, Request for Disclosure, and Application for Temporary Restraining Order (the "Petition") and Counterclaims against Plaintiffs and, in support hereof, respectfully show this Honorable Court the following:

**I.
GENERAL DENIAL**

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant denies each, every, all and singular, allegation contained in Plaintiffs' Petition. Defendant demands strict proof by a preponderance of the evidence and/or by clear and convincing evidence as required by the laws and constitutions of the State of Texas and of the United States.

**II.**
**AFFIRMATIVE DEFENSES**

2.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Plaintiffs' claims and causes of action are barred by *res judicata* and judicial estoppel.

3.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense of release.

4.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense that Plaintiffs' claims are barred by contract.

5.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense of waiver.

6.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense of justification.

7.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense of limitations.

8.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts that there were independent or intervening causes of Plaintiffs' damages.

9.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts that their acts were not the producing cause of Plaintiffs' damages.

10.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense of reliance upon information from other sources pursuant to TEX. BUS. & COM. CODE §17.506(a).

11.        Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense of contributory negligence.  Specifically, Plaintiffs' alleged damages, if any, were caused solely, or alternatively, in substantial part, by Plaintiffs' own negligence or other acts or

2

omissions.  Pleading in the alternative, Defendant invokes the provisions of Chapters 32 and 33 of the Texas Civil Practice & Remedies Code, and would show that, to the extent Plaintiffs sustained any damages, which is not admitted but is denied, the amount of recovery, if any, must be barred or, alternatively, reduced by Plaintiffs' percentage of fault, negligence or responsibility.

12.     Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant denies that Plaintiffs are entitled to any recovery from Defendant.  However, to the extent any recovery is awarded to Plaintiffs, such recovery must be offset by any amounts received from joint tortfeasors or other Defendants according to their proportionate responsibility under the applicable Texas law.  Defendant prays for all credit and/or offset rights at law by virtue of any settlement entered into by Plaintiffs with any party or non-party in connection with or relating to any matter pertaining to the claim or claims made herein by Plaintiffs.  In this regard, Defendant invokes all rights under law, including without limitation, any above-mentioned rights or election of rights provided by §33.014, or otherwise in Chapter 33 of the Texas Civil Practice & Remedies Code, or by any applicable law.

13.     If this Court finds that Defendant committed error, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense of *bona fide* error.

14.     Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the defense that the economic loss rule applies and bars Plaintiffs from recovery in this litigation.

15.     Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant asserts the statute of frauds applies in this matter and bars Plaintiffs from recovery in this litigation.

16.     Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant is entitled to an offset against Plaintiffs' damages, if any, for the amount due and owing under the subject Note and Deed of Trust.

17.     Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Plaintiffs' equitable claims are barred, in whole or in part, because Plaintiffs have unclean hands.

18.     Pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant has no contractual relationship with Plaintiffs; Plaintiffs are third parties who have no right to recover from Defendant.

19.     Defendant reserves the right to amend this Answer to assert other and further defenses.

### III.
#### COUNTERCLAIM

***Frivolous Lawsuit under Texas Law and Reimbursement of Attorneys' Fees and Costs Pursuant to the Note and Deed of Trust***

20.     Plaintiffs' pleadings in this matter violate Tex. Civ. Prac. & Rem. Code §§9.011 *et seq*. and §§10.001 *et seq*. because the pleadings are (1) groundless and brought in bad faith; (2) groundless and brought for the purpose of harassment; or (3) groundless and interposed for an improper purpose, such as to cause unnecessary delay and/or needless increase in the cost of litigation.

21.     Plaintiffs filed a groundless lawsuit to delay Defendant's right to foreclose and take possession of its collateral following default by the borrower.

22.     On information and belief, Plaintiffs and/or others continue to retain possession of the Property without paying mortgage payments, rental payments, property taxes, and/or hazard

insurance.  Plaintiffs now seek injunctive relief, invoking the powers of this Court, to prevent

Defendant from foreclosing and dispossessing it and/or other occupants of the Property.

23.     The Note and Security Instrument permit Defendant to recover attorneys' fees and

costs.  In conjunction with the terms of the Note and Deed of Trust, Defendant seeks recovery of

its reasonable and necessary attorneys' fees, witness fees, costs, fees of experts and deposition

expenses, if any.

***Judicial Foreclosure Pursuant to Tex. R. Civ. P. 309***

24.     In order to obtain the relief of judicial foreclosure from a District Court, the lien

holder must: (a) allege execution and delivery of a secured debt instrument, (b) allege ownership of

the debt instrument, (c) provide a description of the property secured by the lien, (d) allege the

execution and delivery of the lien instrument (an exception is an abstract of judgment), (e) allege the

amount of the unpaid debt, and (f) allege a default by the maker of the debt instrument.  *Graves v.*

*Drane*, 1 S.W. 905 (Tex. 1886); *Shaw v. American Life Ins. Co.*, 60S.W.2d 1110, 1111 (Tex. Civ.

App.-Fort Worth 1933, writ dism'd).

25.     On or about November 16, 2005, James W. Peters and Robyn Peters executed a

Note and Deed of Trust in favor of PrimeLending, a PlainsCapital Company in the original

principal sum of $156,750.00. Defendant is mortgage servicer for Freddie Mae, the owner and

holder of the Note, with respect to the Property and more specifically described as follows:

> DESCRIPTION FOR A 13.00 ACRE TRACT OF LAND OUT OF THE JOSE
> MARIA MORA SURVEY, ABSTRACT NO. 541, WISE COUNTY, TEXAS,
> SAID TRACT BEING A PORTION OF VOLUME 233, PAGE 263,
> D.R.W.C.T.;
>
> COMMENCING AT A 1" PIPE FOUND, SAID PIPE BEING BY DEED CALL
> EAST, 1655.40 VARAS FROM THE SOUTHWEST CORNER OF SAID
> MORA SURVEY, THENCE EAST 1423.40 FEET, THENCE N 00°15'52"E,
> 995.32 FEET TO A  ½" IRON SET FOR THE POINT OF BEGINNING;
>
> THENCE S 89°30'07"W, 348.25 FEET TO A ½" IRON SET;

THENCE N 00°15'52"E, AT 160.20 FEET PASSING A ½" IRON SET AND CONTINUING IN ALL 1626.20 FEET TO A POINT IN THE APPROXIMATE CENTER OF COUNTY ROAD NO. 3598;

THENCE N 89°30'07"E, WITH THE APPROXIMATE CENTER OF SAID COUNTY ROAD NO. 3598, 348.25 FEET TO A 60D NAIL FOUND, SAID NAIL BEING FOR THE NORTHWEST CORNER OF VOLUME 381, PAGE 403, R.R. W.C.T.;

THENCE S 00°15'52"W, WITH THE WEST LINE OF SAID VOLUME 381, PAGE 403, 1626.20 FEET TO THE POINT OF BEGINNING AND CONTAINING 13.00 ACRES OF LAND.

26.     Defendant holds a valid and subsisting lien on the Property.  *Id*.  Presently, the Plaintiffs are in monetary and non-monetary default of their obligations under the terms of the Note and Deed of Trust.  Plaintiffs have not remitted payments.  Plaintiffs conveyed the Property and violated the due on sale clause contained in the Deed of Trust.

27.     Defendant prays that this Court enters a Judgment permitting Defendant to foreclose its lien on the Property, awarding Defendant attorneys' fees for defending this suit used to harass and delay Defendant's ability to foreclose when Plaintiffs lacks standing, and directing the Wise County Constable or Sheriff to seize and sell the Property in satisfaction of the debt.

**IV.**
**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant prays that:

(1)     Plaintiffs take nothing by reason of this suit;

(2)     The Court order immediate judicial foreclosure pursuant to Tex. R. Civ. P. 309;

(3)     The Court award Defendant its reasonable and necessary attorneys' fees and costs incurred in its defense; and

(4)     Defendant be awarded such other and further relief, at law or in equity, to which they may be justly entitled.

6

Respectfully submitted,

GALLOWAY JOHNSON TOMPKINS BURR & SMITH
A Professional Law Corporation

By: ___//s// Branch M. Sheppard_____
          BRANCH M. SHEPPARD
          Texas State Bar No. 24033057
          bsheppard@gallowaylawfirm.com
          BERENICE MEDELLÍN PRUETTIANGKURA
          Texas State Bar No. 24088746
          bmedellin@gallowaylawfirm.com
          1301 McKinney, Suite 1400
          Houston, Texas 77010
          (713) 599-0700 (Telephone)
          (713) 599-0777 (Facsimile)
          **ATTORNEYS FOR DEFENDANT**
          **SPECIALIZED LOAN SERVICING, LLC**

## CERTIFICATE OF SERVICE

       I hereby certify that a true and correct copy of the foregoing pleading was delivered via electronic filing to the following on this 13th day of June, 2019.

DAVID M. VEREEKE
GAGNON, PEACOCK & VEREEKE, P.C.
1349 EMPIRE CENTRAL DRIVE
SUITE 500, LOCK BOX 56
DALLAS, TEXAS 75247
**ATTORNEY FOR PLAINTIFFS**

ELIZABETH HAYES
ROBERT T. MOWREY
MARC D. CABRERA
2200 ROSS AVENUE, SUITE 2200
DALLAS, TEXAS 75201
**ATTORNEYS FOR WELLS FARGO**

                  ___//s// Branch M. Sheppard_____
                  BRANCH M. SHEPPARD

Filed 6/12/2019 9:31 AM
Brenda Rowe, District Clerk
Wise County
By: Janean Kerr

## CAUSE NO. CV19-05-446

| | | |
|---|---|---|
| **JAMES W. PETERS, JR.** | § | **IN THE DISTRICT COURT** |
| **AND ROBYN PETERS,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **vs.** | § | **271ST JUDICIAL DISTRICT** |
| | § | |
| **SPECIALIZED LOAN SERVICING, LLC** | § | |
| **AND WELLS FARGO BANK N.A.,** | § | |
| | § | |
| *Defendants*. | § | **WISE COUNTY, TEXAS** |

## DEFENDANT WELLS FARGO'S ORIGINAL ANSWER

Defendant Wells Fargo Bank, N.A ("Wells Fargo" or "Defendant") files this Original Answer and respectfully shows the following:

### I.    GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Wells Fargo generally denies each and every allegation in Plaintiffs James W. Peters, Jr. and Robyn Peters' ("Plaintiffs") *Verified Original Petition, Request for Disclosure, and Application for Temporary Restraining Order* (the "Petition"), as well as any and all amended or supplemental petitions, and demands strict proof thereof.

### II.    AFFIRMATIVE AND OTHER DEFENSES

In addition to its general denial, and without assuming the burden of proof thereon, Wells Fargo asserts the following affirmative and other defenses:

1.    Plaintiffs fail to state a claim upon which relief can be granted, and therefore, each of their claims should be dismissed.

2.    Plaintiffs' claims are barred, in whole or in part, because of their prior material breach.

3.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs fail to allege and prove all conditions precedent to recovery.

4.      Plaintiffs' claims and/or requested relief are barred, in whole or in part, by the applicable statutes of frauds.

5.      Plaintiffs' claims and/or requested relief are barred, in whole or in part, by the applicable statutes of limitation.

6.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, quasi-estoppel, waiver, unclean hands, laches, and/or other equitable doctrines.

7.      Wells Fargo claims all offsets and credits available to it.

8.      Plaintiffs' claims are barred, in whole or in part, because they are still in possession of the subject property and have not tendered the amount due and owing on their debt.

9.      Plaintiffs' claims are barred, in whole or in part, by reason of Wells Fargo's compliance with applicable statutes and other provisions of law.

10.     Plaintiffs' claims are barred, in whole or in part, by reason of Wells Fargo's compliance with the relevant agreement(s).

11.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of bona fide error.

12.     Plaintiffs' claims are barred, in whole or in part, because Wells Fargo's acts and/or omissions were not the cause of Plaintiffs' damages, if any.  Rather, Plaintiff's damages, if any, were proximately caused by the acts, omissions, or breaches of other persons and/or entities, including Plaintiffs themselves, and the acts, omissions, or breaches were intervening and superseding causes of Plaintiffs' damages, if any.

13.     Plaintiffs' claims are barred, in whole or in part, because they failed to mitigate their damages, if any.

14.     Plaintiffs' attorney's fees are not recoverable, reasonable, or necessary.

15.     Wells Fargo denies liability for punitive or exemplary damages.  Further, any claim for punitive or exemplary damages is subject to the limitations and constraints of Due Process found in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 19 of the Texas Constitution.

16.     Plaintiffs' claims may also be barred by additional defenses that may arise during the course of this litigation.  Wells Fargo reserves the right to plead such other and/or affirmative defenses which cannot be anticipated at this time, but which may become apparent and applicable during the pendency of this lawsuit, by reason of future discovery.

## IV.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Wells Fargo asks the Court to enter judgment that Plaintiffs take nothing on their claims and award Wells Fargo all other and further relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

**LOCKE LORD LLP**

/s/ *Elizabeth Hayes*
**Robert T. Mowrey**
  State Bar No. 14607500
  rmowrey@lockelord.com
**Marc D. Cabrera**
  State Bar No. 24069453
  mcabrera@lockelord.com
**Elizabeth Hayes**
  State Bar No. 24069001
  elizabeth.hayes@lockelord.com
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-6776
(214) 740-8000 (telephone)
(214) 740-8800 (facsimile)

**COUNSEL FOR WELLS FARGO**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing document was served on June 12, 2019 on the following via e-service and/or facsimile and/or CMRRR pursuant to the Texas Rules of Civil Procedure:

> David M. Vereeke
> GAGNON, PEACOCK, & VEREEKE, PC
> 1349 Empire Central Drive
> Suite 500, Lock Box 56
> Dallas, TX 75247
> *Counsel for Plaintiff*

> /s/ *Elizabeth Hayes*
> Elizabeth Hayes